SINCLAIR PRAIRIE OIL CO. v. DOSE.

No. 29811.   Sept. 9, 1941.

Rehearing Denied Oct. 28, 1941.

*118 P. 2d 210.*

Edward H. Chandler, A. A. Davidson, and Summers Hardy, all of Tulsa, for plaintiff in error.

L. J. Burt and R. E. Stephenson, both of Sapulpa, for defendant in error.

RILEY, J.  Plaintiff in the trial court recovered a judgment for damages for the alleged breach of written agreements entered into between the defendant, as employer, and the International

Association of Oil Field, Gas Well and Refinery Workers, acting in behalf of the employees of defendant who were members of said association. The intent of the agreements as stated therein was to promote an increasing spirit of harmony between the employer and its employees who were members of the association and to insure the most efficient operation of the facilities of the employer.

Plaintiff was a member of the association and entitled to the benefits of the provisions of said agreements.

There were three agreements. The first was dated May 31, 1934, and continued in force until the execution of the second, August 30, 1935, which in turn remained in force until the execution of the third, October 1, 1936. The last agreement remained in force until after plaintiff ceased to be an employee of defendant.

The first agreement provided:

"In filling vacancies in the higher classifications the employer accepts the principle of exercising due regard for length of service, taking into account ability and efficiency; and the general practice will be followed of promoting those who, by length of service and ability, shall be deemed to have earned promotion. . . ."

The second and third agreements had the same, with further provisions:

"Seniority shall be strictly adhered to in both plant and departments so long as the employee has ability and executes the job in a safe and workmanlike manner. Any employee starting in the labor department and advancing in any of the various departments shall hold his labor department seniority, but in no case can he retract to said department and rank above an employee that has longer plant service. In the event that an employee be hired to a department for any particular or temporary service he shall in no case hold any seniority right over employees of any other department having longer service. Employees service seniority shall be retroactive only to date of transfer to said department. It is the spirit of this article that an employee may start his employment in the labor department and advance through the various departments and hold seniority right in the labor department. . . .

"The last man hired in the labor gang is the first man to be laid off in case of a layoff. The last man to be laid off to be the first man rehired when taking on more men. Any man laid off shall be given notice of opportunity of re-employment.

"Seniority lists shall be compiled and be kept at all times available to the Workman's Committee or to any employee.

"Local Workmen's Committees with local managements shall meet within two weeks from the date of this agreement for the purpose of arriving at mutually satisfactory applications, working rules and understanding of the seniority rule, giving consideration to job department and plant seniority."

Plaintiff's first claim is that for six months of each of the years 1935, 1936, and 1937, defendant had employment open at Kiefer, Okla., in the district in which he was employed, for extra pumper during the vacation periods of the several regular well pumpers, through May to and including October; that plaintiff possessed the skill and ability to perform said work, and by reason of his service seniority was entitled to said employment; that defendant, in violation of said agreement, classification and seniority rules, refused to place plaintiff in said employment as extra pumper, and placed another employee therein from the same class as plaintiff, who had a shorter period of service with defendant, and less seniority than plaintiff, notwithstanding plaintiff's repeated requests that he be given said employment as relief pumper; that the job of relief pumper paid 30 cents per day more than that of roustabout, in which class both plaintiff and the employee placed in said job had been; that by reason thereof plaintiff was deprived of right to have the extra 30 cents per day during said six-months period during each of the three years, to his damage in the sum of $129.60. Plaintiff also claimed that by reason of his not being

given said job he was forced to work a great distance from his home and was forced to expend $147 for transportation to and from his work.

His other claim is that he was discriminated against by reason of being refused said job of relief pumper, and by the further fact that he was required to perform more arduous work than some of the other employees in his class who had less seniority than he; that by reason thereof his health was impaired to the extent that he became wholly and totally disabled, all to his damage in the sum of $3,000. Defendant demurred to what it denominated "plaintiff's second cause of action," upon the grounds that the facts stated did not constitute a cause of action. The demurrer was overruled because the trial court was of the opinion that the petition contained but one cause of action.

Thereupon defendant filed its answer admitting the execution of the three agreements referred to in plaintiff's petition and made a part thereof, and denied all of the other allegations in plaintiff's petition and specifically denied that the matters and things set forth in the second paragraph of plaintiff's petition (that part of the petition as to damages because of alleged impairment of health) arose out of or in course of plaintiff's employment, and denied that the same was covered by or included in the agreements, and alleged that if plaintiff sustained physical impairment, the same was a result of illness of plaintiff and was occasioned by other and natural causes, to which defendant did not contribute and for which defendant was not responsible.

The matters set forth in paragraph one of the petition (loss of wages, transportation and expense) defendant alleged came within the provisions of article 23 of the first and second contracts and article 22 of the third contract, which required plaintiff to seek adjustment of his grievance and disputes under the provisions of said agreements in the manner therein provided, and that plaintiff had failed so to do, and was therefore estopped to maintain this action.

After reply in the nature of a general denial, the issues joined were tried to a jury.

At the close of plaintiff's evidence, defendant demurred thereto. The demurrer was overruled, and at the close of all the evidence, defendant moved for a directed verdict in its favor. The motions being overruled, the cause was submitted to the jury, resulting in a verdict for plaintiff in the full amount sued for, and defendant appeals.

There are 36 assignments of alleged error presented under five propositions.

We pass, for the present, the first and second propositions. The third proposition goes to the question of the right of plaintiff to recover (1) for expenses of transportation to and from his work, and (2) damages on account of physical disability. It is asserted that there is no competent evidence under the contract to sustain either.

As to expense of transportation, the contracts provide:

"In case where an employee reports to his regular place of employment as instructed and then is instructed to report to any other place for work, transportation shall be supplied by the employer or be compensated for."

There is no evidence that plaintiff reported at his regular place of employment as instructed and then was instructed to report to another place for work.

Plaintiff wholly failed to bring himself within that provision. There is no other provision in the contracts whereby the employer agreed to provide transportation or compensate therefor. It was error to submit that element or item of damages to the jury.

All of the agreements provide:

"Employees in any classification are expected to perform any duties to which

they may be assigned. If work of a higher paid classification is temporarily required of any employee, he shall receive the wage of the position to which he has been assigned and for as long a time as he occupies that position."

The duties were to be in accord with the classification definition set forth in article 9 of the third agreement. Article 9 of the second contract and article 8 of the first contract had the same provisions.

By other provisions of the agreement, job classification in the production department was required by the contract, and it appears that said classification, beginning with the lowest class, was:

"Laborers", "roustabouts", "pumpers", and five other classes, up to and including "cleanout drillers."

The evidence shows that plaintiff entered the employment of one of the companies later consolidated with defendant corporation in 1922.

He was first classified as a "roustabout" and remained in that class until about 1928. He was then classified as a "pumper," and remained in that class until about September 12, 1934, at which time he was, at his own request, placed back in the "roustabout" class.

The reason for the request was that plaintiff desired shorter working hours.

There is no classification of different kinds of duties in any one of the different classes; therefore, under the terms of the contract, the employer was at liberty to assign plaintiff to any task within his proper classification. He had no right to choose which particular line of work he would do within his classification. It may be that he was sometimes required to perform more arduous tasks than some of the other men within his class who had less service with the company. But that was no breach of the contract. Plaintiff has never pointed out any provision of the contract which he contends was breached by reason of his assignment to any particular work.

There is a provision that there shall be no discrimination of any kind against any member of the association. But if assignment of plaintiff to a particular kind of work would be discrimination against him, the same could be said of any other member of the association.

The discrimination mentioned means discrimination against any member as such, or because he was a member. Defendant was not required to assign plaintiff to "ride the rod wagon," instead of "driving a tractor," merely because plaintiff conceived the idea that he was entitled to his choice of such work because of his long service with the company, or because the one job was less arduous than the other.

There was no evidence showing a breach of the contract in respect to the kind of work plaintiff was required to perform within his class.

Furthermore, there is no competent evidence to show that plaintiff's physical disability was proximately caused by the kind of work he was required to do.

It was error to submit that element of damages to the jury.

We now consider defendant's first proposition. It is that the court was without jurisdiction to entertain the action for the reason that plaintiff failed to avail himself of and exercise the remedies provided in the contracts for the adjustment of his grievances. In this connection defendant cites article 4 of the contracts, which provides:

"All grievances and disputes as to wages and working conditions arising between the employer and the employees herein mentioned shall be governed by the terms of this agreement. Whenever any such grievance or dispute arises which cannot be otherwise adjusted, the parties hereto agree that the same shall be decided in the manner provided for in Article XXIII hereof."

As stated above, article 23 of the first and second contracts, with some addi-

tions, became article 22 of the third contract. It provides that for the purpose of adjusting grievances and disputes arising within any region of operation each individual employee who is a member of the association shall first seek direct adjustment of any grievance or dispute (not involving a construction of the terms of the agreement) with the foreman under whom he is employed. If such employee fails there to secure an adjustment, he should then submit his grievances to a committee, selected as provided in the agreement, under a plan of employee representation, and by successive appeal to the highest executive officers of the employer and the association, and in case of failure there, a plan of arbitration was provided.

Where a contract between an employer and trade union provides for resort to a designated tribunal for the adjustment of controversies between such employer and the trade union or its members, such remedies must be exhausted before resorting to the courts for redress. Reed v. St. Louis S. W. R. Co. (Mo. App.) 95 S. W. 2d 887, and cases there cited.

Here there is a dispute as to the meaning of the clause in article 6 of the agreement which reads:

"In filling vacancies of the higher classifications the employer accepts the principle of exercising due regard for length of service, taking into account ability and efficiency; and the general practice will be followed of promoting those who, by length of service and ability, shall be deemed to have earned promotion. . . ."

Plaintiff contends that it applies to filling vacancies of a temporary character and particularly the job of vacation relief pumper. Defendant contends that it applies only to filling vacancies of a permanent character; that no vacancy in a higher classification exists where a regular pumper is away from his work temporarily on vacation.

It is clear then that plaintiff's "grievance" involved construction of the terms of the agreement. The method provided for settlement thereof was not within the provisions of article 22 or 23.

There being no tribunal or method for settling the grievance provided in the agreements, construction of the terms is for the court.

The trial court took the view and instructed the jury that article 6 of the agreement is clear and concise as to its purposes with reference to the placement of employees, and provides that seniority should be strictly adhered to in both plant and departments, so long as employees have ability and execute the job in a safe and workmanlike manner.

In other words, the trial court in effect instructed the jury that article 6 of the agreement is so clear and concise as to its purpose with reference to placement of employees that it needs no construction.

If this were true, then it would follow that the plaintiff could not prevail for the reason that he failed to pursue the remedies provided in articles 22 and 23 of the agreements. It required him to first submit his grievance to his foreman, and failing there to present it to the committee, and through the committee to the superintendent, and on up, finally to arbitration.

But we take a different view. The question of plaintiff's right to the place of relief pumper requires a construction of the terms of the agreement, and this means the agreement as a whole.

The agreement calls for classification of the employees into different classes. This it appears was done. The employees were classified into classes: (1) "laborers", (2) "roustabouts", (3) "pumpers", and five other higher classes.

Article 5 of the agreement, as we have seen, provides that employees in any classification are expected to perform any duties to which they may be assigned, such duties to be in accord with

classification definitions set forth in article 9.

It also provides if work at a higher paid classification is temporarily required of any employee, he shall receive the wage of the position to which he has been assigned as long as he occupies that position. But if any employee is temporarily shifted to any classification paying a smaller wage than his regular assigned classification, no reduction in wages shall be made. That section clearly contemplates temporary shift from work of one classification to work of a higher or lower classification.

For temporary shift no permanent change in an employee's classification is contemplated. The employee is fully protected either way. If he is temporarily shifted to work of a class for which a higher wage is paid, the employee gets the benefit of the higher pay. If he is shifted to a class of work calling for lower wage, he draws his regular wage. Article 6 is intended to and does apply where there is a vacancy which calls for promoting an employee to a higher classification. The general practice is to be promotion of those who, by length of service and ability, shall be deemed to have earned promotion. Taken in connection with article 5, the provisions of article 6 clearly contemplate and mean filling vacancies of a permanent character. In fact, it says in filling vacancies of the "higher classifications." That means promotion of an employee from one classification to another. Vacation relief pumper is necessarily a temporary assignment.

If promotion or reclassification were required for the "relief" pumper job, then under article 5, supra, when vacation relief time was over, and the relief pumper would be assigned back to roustabout work, temporarily until the next year, he would be entitled to draw pumper wages, because it would be shifting him temporarily to a classification paying a smaller wage.

We hold that under the company agreement as a whole, plaintiff was not entitled as a matter of right to be assigned to the temporary work of relief pumper.

Article 5 clearly applies to such temporary shift and gives the employer the right to elect which employee shall be selected for the temporary work, and this without regard to length of service.

There was and could be no breach of the agreement by assigning a man of less length of service to the temporary pumping work.

It was error to deny the motion of defendant for a directed verdict.

The judgment is reversed, with directions to enter judgment for defendant.

CORN, V. C. J., and OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., dissents. GIBSON, J., absent.